OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 17, 2000

The Honorable Tim Curry
Tarrant County Criminal District Attorney
401 West Belknap
Fort Worth, Texas 76196-0201

Opinion No. JC-0195

Re:   Whether a county sheriff is authorized to manage and dispose of cash bail bond money for unfiled criminal cases, and related questions (RQ-0117-JC)

Dear Mr. Curry:

You ask about the maintenance and disposition of cash bail bonds for criminal "no-filed" cases, and the disposition of unclaimed liquidated certificates of deposit held as security for the execution of bail bonds. Specifically, you first ask whether the Tarrant County Sheriff (the "sheriff") is required to forward cash bail bonds for unfiled cases to the district or county clerk for deposit in the county trust depository. Second, if the sheriff is not required to do so, you ask whether the sheriff is authorized to maintain the funds in a separate interest bearing account at the county depository. Third, you ask whether the county auditor must be a signatory on that account. Fourth, you ask whether the sheriff may disburse these funds to known defendants against whom no case is filed. Fifth, you ask whether no-filed case cash bail bonds become abandoned property subject to chapter 74 of the Property Code when the defendant cannot be found; and, if so, you also ask about the application of certain provisions of the Property Code dealing with abandoned property. Sixth, you ask whether liquidated certificates of deposit given as security for the execution of bail bonds become abandoned property subject to chapter 74 when the bondsmen or attorneys who deposited them cannot be found; and, if so, you also ask about the application of certain provisions of the Property Code. Finally, you ask whether all interest earnings on the no-filed case cash bail bonds and the liquidated certificates of deposit must be returned to the depositors. *See* Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (Sept. 27, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"].

To provide a context for your questions regarding no-filed case cash bail bonds, we briefly review the statutory scheme governing the taking of bail bonds. A bail bond is a written undertaking binding a defendant in custody to appear before a court or a magistrate to answer a criminal accusation. *See* TEX. CODE CRIM. PROC. ANN. art. 17.02 (Vernon 1977). The bond is in a specific amount and must be executed by the defendant and his or her surety. *See id.* The surety is often, but not always, a professional bondsman. *See* Tex. Att'y Gen. Op. No. JC-0024 (1999) at 1. In lieu of having a surety, a defendant may deposit cash with the custodian of the court in which the defendant's case is pending. *See* TEX. CODE CRIM. PROC. ANN. art 17.02 (Vernon 1977). Such cash

deposits are "cash bail bonds." *Melton v. State*, 993 S.W.2d 95, 97 (Tex. 1999). They are returned to the defendant if he or she complies with the conditions of the bond "and upon order of the court." TEX. CODE CRIM. PROC. ANN. art 17.02 (Vernon 1977). Once the required bail is given either to a magistrate, a court, or "the officer having him in custody," the defendant must be set free. *Id.* art. 17.29 (Vernon Supp. 2000).

Under article 17.02 of the Code of Criminal Procedure, cash bail bonds are "receipted for by the officer receiving the same." *Id.* art 17.02 (Vernon 1977). Article 17.05 provides that a peace officer may "take" bail from the defendant if authorized by articles 17.20, 17.21, or 17.22 of the Code of Criminal Procedure. *See id.* art 17.05. Article 17.20 provides that a sheriff, "or other peace officer, in cases of misdemeanor, may, whether during the term of the court or in vacation," take bail bond from a defendant the officer has in custody. *Id.* art. 17.20. Article 17.22 permits a sheriff or "other peace officer" having a defendant in custody in a felony case to take bail if the court before which the case is pending is not in session. *Id.* art. 17.22. And, article 17.21 permits a sheriff or other peace officer "unless it be the police of a city" to take bail from the defendant in the officer's custody even when the court in which the prosecution is pending is in session. *Id.* art. 17.21. Because of these provisions allowing a sheriff or another peace officer to take cash bail bonds, Attorney General Opinion C-740 determined that the article 17.02 officers authorized to "receipt" cash deposits include peace officers "as well as the custodian of funds of the court in which the prosecution is pending, which would be the clerk of the court or a justice of the peace." Tex. Att'y Gen. Op. No. C-740 (1966) at 4.

The receipted cash bail bonds, however, must be deposited "with the custodian of funds of the court in which the prosecution is pending." *Id.* And the sheriff or another peace officer, according to Attorney General Opinion C-740, is neither an authorized nor appropriate custodian. *See id.* Accordingly, the opinion advised, a sheriff should simply *receipt* the cash bonds and turn over the money to the authorized custodian, namely, the clerk of the court or the justice of the peace as appropriate. *See id.*; *see also* Tex. Att'y Gen. Op. No. H-183 (1973) at 10 (sheriff to deposit cash bail bonds with district clerk or county clerk) (citing Attorney General Opinion C-740).

Your first five questions relate to cash bail bonds accepted and receipted by the sheriff. You explain that before a case is filed, the cash bonds are initially deposited in the Tarrant County Sheriff's Trust Fund Account (the "Trust Account"), a separate interest bearing account managed by the sheriff, because they cannot be deposited in the registry of a court given that no court case is yet filed. When the Office of the Criminal District Attorney in Tarrant County (the "D.A.'s office") files a criminal case against a defendant, the cash bond is forwarded to the court registry. The cash bond remains in the Trust Account, however, when the D.A.'s office does not file a case against the defendant from whom the cash bond was taken. If no case is filed, the D.A.'s office sends to the defendant and the sheriff a "no-file letter." When a "no-file letter" is issued, the sheriff's department attempts to locate that defendant. If he or she is found, the department releases the cash bond to the defendant; otherwise it remains in the Trust Account. *See* Request Letter at 1-2.

We understand you to ask first whether the sheriff is required to forward the no-filed case cash bail bonds to the district or county clerk for deposit in the county trust depository. We conclude in the negative because the statutory provisions requiring a sheriff to forward the cash bail bonds to the county or district clerk for deposit in the county trust depository are inapplicable when no case is filed against a defendant.

First, article 17.02 of the Code of Criminal Procedure requiring the deposit of cash bail bonds with the clerk of the court or the justice of the peace as "custodian of funds of the court *in which the prosecution is pending*," is premised on filing of a criminal case. Attorney General Opinion C-740's determination that the sheriff must turn over the funds to the court custodian is similarly premised on the filing of a case and the involvement of a court:

> [T]he officer receiving the cash, if he is not the custodian of the funds of the court, should deposit the sum of money received with the custodian. We are of the opinion that there is no necessity or authority for a court to appoint a sheriff as custodian of the funds since the clerk of the court or the justice of the peace, as the case may be, is already charged with that duty. The sheriff or other peace officer accepting the cash bond should simply receipt the bond to the defendant and then turn the money over to the clerk of the court or the justice of the peace, whichever is the appropriate officer. *We note however that if the court in which the cash bond is given does not have jurisdiction to try the defendant, the cash bond should be transferred to the clerk of the court that has such jurisdiction.*

Tex. Att'y Gen. Op. No. C-740 (1966) at 4-5 (emphasis added). Clearly if no case is filed, there is no court custodian with whom the funds may be deposited.

Second, when funds are not deposited with a court, chapter 117 of the Local Government Code, dealing with the deposit and management of court registry trust funds, including cash bail bonds, is inapplicable. Chapter 117 applies only to trust funds held by the district or county clerk and not to trust funds held by other county officials. *See* Tex. Att'y Gen. Op. No. DM-396 (1996) at 5 n.7; 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 14.11 (1989). Section 117.052 requires a county clerk or a district clerk, who is to have for more than three days legal custody of money deposited in the registry of the court pending the result of a legal proceeding, including cash bail bonds, to deposit the money in the county's depository bank for trust funds if the county has selected one. *See* TEX. LOC. GOV'T CODE ANN. § 117.052(a), (c) (Vernon 1999). Because the cash bail bonds in question are not deposited in the court registry and held by the district or county clerk, chapter 117 does not, by its terms, apply to them.

In short, article 17.02 of the Code of Criminal Procedure and chapter 117 of the Local Government Code do not govern the deposit of cash bail bonds accepted by a sheriff from a

defendant when no case is filed against that defendant. Accordingly, the sheriff is not required to forward the funds to the county clerk or district clerk for deposit in the county's trust depository.

You next ask whether the sheriff is authorized to maintain the funds in a separate interest bearing account at the county depository. *See* Request Letter at 3. We conclude in the affirmative.

Chapter 117 of the Local Government Code provides for a county trust depository where court registry trust funds must be deposited. Chapter 116 of the Local Government Code, on the other hand, provides for a general county depository where county funds and funds under the control of county officials must ordinarily be deposited. *See* TEX. LOC. GOV'T CODE ANN. § 116.002 (Vernon 1999); Tex. Att'y Gen. Op. No. H-1185 (1978); 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 14.5 (1989). The county depository is a bank selected and designated as such under chapter 116. *See* TEX. LOC. GOV'T CODE ANN. § 116.021 (Vernon 1999). Chapter 116 of the Local Government Code generally requires the commissioners court of a county to contract with one or more banks in the county for the deposit of the county's public funds selected in accordance with the specified procedures. *See id.* §§ 116.021-.027. Funds deposited with the bank selected are secured by the bank's pledge of a personal bond, surety bond, securities, mortgages, real property, or a combination of the enumerated items. *See id.* § 116.051. The county treasury is an account or fund in which generally county funds must be deposited and maintained at the county depository bank. *See generally id.* §§ 113.001-.024 (Vernon 1999 & Supp. 2000). Your request letter indicates that the Trust Account is maintained at the county depository. We believe the sheriff may maintain the Trust Account as a separate interest bearing account managed by the sheriff for the following reasons.

First, the sheriff is impliedly authorized to hold and manage the cash bail bonds when they cannot be deposited with a court. As previously discussed, a sheriff is expressly authorized to accept and "receipt for" cash bail bonds. *See* TEX. CODE CRIM. PROC. ANN. arts. 17.02, .05, .20, .21 .22 (Vernon 1977); Tex. Att'y Gen. Op. No. C-740 (1966) at 4. Additionally, a sheriff is required to keep an account of bail transactions. *See* TEX. CODE CRIM. PROC. ANN. art. 17.39 (Vernon Supp. 2000); Tex. Att'y Gen. Op. No. JM-856 (1988) at 3. Moreover, based on these duties, a sheriff in turn is liable for cash shortages in the cash bail bonds accepted or collected. *See* Tex. Att'y Gen. Op. Nos. JM-856 (1988) at 4-5, H-751(1975) at 1-2. These statutory duties with respect to cash bail bonds necessarily require a sheriff to hold and provide for the safekeeping of the funds before they are forwarded and deposited with the clerk of the court in which the prosecution is pending in the usual circumstances. Similarly, we believe they also necessarily obligate the sheriff to hold and provide for the safekeeping of those funds when there is no court with which the funds may be deposited because no case is filed.

Second, chapter 116 of the Local Government Code contains no express provision regarding the deposit of funds in a separate account or an interest bearing account.[1] In an analogous situation,

---

[1]But certainly more than one account may be maintained at the county depository. *See, e.g.,* Tex. Att'y Gen.

(continued...)

Attorney General Opinion DM-282 determined that in the absence of a statutory or regulatory direction, a sheriff in the exercise of his or her discretion was authorized to keep jail inmate funds in a separate interest bearing account. *See* Tex. Att'y Gen. Op. No. DM-282 (1994) at 4. Similarly, we conclude here that in the absence of statutory direction, a sheriff in the exercise of the authority to hold and manage no-filed case cash bail bonds may keep those funds in a separate interest bearing account at the county depository. *See id.*

You next ask: "Because the county auditor, acting as county treasurer, does not have signatory authority over the account although the account is listed as collateralized in the Tarrant County depository bank agreement, would this account be considered a county depository?" Request Letter at 2. Again, we understand that the Trust Account is maintained at the county depository and secured by the depository bank's collateral. The fact that the Tarrant County Auditor does not have signatory authority does not remove the Trust Account from the county depository. Clearly, more than one account may be maintained at the county depository bank, and funds may be maintained at the county depository that are outside the county treasury account. *See, e.g.,* Tex. Att'y Gen. Op. No. H-183 (1973) at 9 (possible that taxes collected by tax assessor-collector for various governmental bodies in addition to county will be in non-treasury account in county depository). Based on your questions, we assume the Trust Account is an account outside of the county treasury account. The county auditor is generally required to countersign checks and warrants drawn against the county treasury. *See id.; see also* Tex. Att'y Gen. Op. No. JM-882 (1988) (neither signature of county treasurer or auditor required to withdraw court registry trust funds because funds do not belong to county). We are not aware of any requirement that the county auditor or the treasurer must have signatory authority in order for an account to be maintained in the county depository.

While the county auditor need not be a signatory on the Trust Account, the county auditor may require that the county auditor be a signatory pursuant to that officer's authority to prescribe procedures to be used by all county officers. *See* TEX. LOC. GOV'T CODE ANN. § 112.002 (Vernon Supp. 2000); *see also* Tex. Att'y Gen. Op. No. H-183 (1973) at 9 ( county auditor may require countersignature on trust fund account in county depository). A sheriff's authority to maintain the separate interest bearing account may be limited by the county auditor, who "may adopt and enforce

---

[1](...continued)
Op. No. H-183 (1973) (possible that taxes collected by tax assessor-collector for various governmental bodies in addition to county will be in non-treasury account in county depository). Additionally, chapter 116 clearly contemplates that funds deposited at the county depository may bear interest. Section 116.111 authorizes the commissioners court to determine and designate the amount of funds that may be in interest bearing "time deposits," *see* Tex. Att'y Gen. Op. No. JM-1162 (1990) at 3-4 (funds placed in time deposits generate interest). TEX. LOC. GOV'T CODE ANN. § 116.111 (Vernon 1999). Finally, it is certainly possible for different accounts maintained at the county depository to be managed and controlled by particular entities or officers. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. § 140.003(f) (Vernon 1999) (specialized local entity required to deposit in county treasury funds received; county required to "hold, deposit, disburse, invest, and otherwise care for the funds on behalf of the specialized local entity as the entity directs); Tex. Att'y Gen. Op. No. DM-460 (1997) at 4-5 (juvenile board rather than commissioners court has control over disbursement of board's funds deposited in county treasury pursuant to section 140.003).

regulations . . . that the auditor considers necessary for the speedy and proper collecting, checking, and accounting of the revenues and other funds and fees that belong to the county or to a person . . . for whose use or benefit the [county or precinct] officer holds or has received funds." TEX. LOC. GOV'T CODE ANN. § 112.002(b) (Vernon Supp. 2000). *See* Tex. Att'y Gen. Op. Nos. DM-282 (1994) at 4-5 (sheriff's discretion to maintain separate interest bearing account for jail inmate funds may be limited by auditor's authority under section 112.002(b)); JM-1162 (1990) at 3 (county auditor under section 112.002 may require clerk to place trust funds in separate accounts); H-183 (1973) at 9 (predecessor statute to section 112.002(b) permits county auditor to require certain accounting procedures with respect to trust funds).

You next ask whether the "sheriff's department [has] the authority to return the cash bond monies received and placed into the Sheriff's Department Trust Fund Account to defendants whose criminal cases have been 'no-filed' by the District Attorney's Office." Request Letter at 2. We conclude in the affirmative.

The sheriff holds the cash bail bonds only as a bailee and, thus, the common-law bailment principles apply to the holding of the cash bail bonds. The elements of bailment are (1) delivery of personal property for specific purpose, (2) acceptance by transferee of delivery, (3) agreement that purpose will be fulfilled, and (4) understanding that property will be returned to the transferor. *See, e.g, Sears, Roebuck and Co. v. Wilson*, 963 S.W.2d 166, 168-69 (Tex. App.–Fort Worth 1998, no pet.). Once the purpose of the bailment is fulfilled, the bailee is obligated to return the bailed property to the bailor. *See English v. Dhane*, 294 S.W.2d 709, 711 (Tex. 1956).

A cash bail bond accepted by the sheriff secures the appearance of the defendant in court or before a magistrate to answer any accusations against him or her. *See* TEX. CODE CRIM. PROC. ANN. arts. 17.01, .02. (Vernon 1977). In the usual case, cash bail bonds must be refunded to the defendant if and when the defendant complies with the conditions of the bond, and upon a court order. *See id.* art. 17.02; *see also* Tex. Att'y Gen. Op. No. JM-856 (1988) at 3 (refunding defendant's bond money upon defendant's compliance with conditions of his or her bond among sheriff's statutory duties). When there is no prosecution, the cash bond is unnecessary to secure the defendant's appearance. And, of course, there are no conditions of the bond with which the defendant must comply to be entitled to the return of the cash bond. Thus, under the common-law principles of bailment, the sheriff must return the cash bail bond money to the defendant when no case is filed against the defendant. Accordingly, we conclude that if no case is filed, the sheriff is impliedly authorized to return and, indeed, must return, the funds to the defendant.

You next ask "if the defendant cannot be found, are the cash bond proceeds for criminal cases not filed by the District Attorney's Office considered abandoned property[?]" Request Letter at 2. If "considered abandoned property," you also ask additional questions regarding the application of certain provisions of the Property Code dealing with abandoned property. *See id.* at 2-3.

Chapter 74 of the Property Code governs property that is presumed abandoned, and "is designed to provide a means for absent owners to reclaim their property." *Melton v. State*, 993

S.W.2d 95, 97 (Tex. 1999). In furtherance of that purpose, chapter 74 sets out a procedure whereby persons holding property that is presumed abandoned pursuant to chapters 72, 73, or 75 of the Property Code must annually report and deliver such property to the Comptroller of Public Accounts. *See* TEX. PROP. CODE ANN. §§ 74.001, .101, .301 (Vernon Supp. 2000). In general, personal property is presumed abandoned if after a three-year period (the "dormancy period")

> (1) the existence and location of the owner of the property is unknown to the holder of the property; and
>
> (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised.

TEX. PROP. CODE ANN. § 72.101 (Vernon 1995).

In *Melton v. State*, the Texas Supreme Court held that: (1) unclaimed cash bail bonds become abandoned property subject to chapter 74 three years from the date of final judgment in the underlying criminal prosecution; (2) county clerk is a "holder" required to report and deliver the abandoned cash bonds to the Comptroller of Public Accounts; and (3) a court order is necessary to trigger the clerk's duty to deliver such cash bonds to the Comptroller of Public Accounts, but not to trigger the clerk's duty to report them. *See Melton*, 993 S.W.2d at 97.

Chapter 72 sets out the general provisions regarding abandoned personal property. It applies broadly to personal property whose owners are unknown or cannot be located and that is presumed abandoned under chapter 72. *See* TEX. PROP. CODE ANN. § 72.001 (Vernon 1995). Property presumed abandoned under chapter 72 is subject to the provisions of chapter 74 of the Property Code. *See id.* § 72.001(d). Under *Melton*, unclaimed cash bail bonds may become abandoned property subject to chapter 74. Accordingly, we conclude that unclaimed no-filed case cash bail bonds held by the sheriff may become abandoned property subject to chapter 74 of the Property Code.

We do not believe that *Melton's* holding limits application of chapter 74 to cash bail bonds deposited into the court registry and maintained in the county trust depository as you appear to suggest. Nothing in the opinion so indicates. Because the cash bail bonds in that case *were* court registry funds subject to article 17.02 of the Code of Criminal Procedure and chapter 117 of the Local Government Code, the specific statutory requirements of article 17.02 and chapter 117 applied. Accordingly, (1) the county or district clerk as custodian of the funds was required to report and deliver unclaimed funds to the Comptroller of Public Accounts, *see* TEX. LOC. GOV'T CODE ANN. §§ 117.002, .052(c)(6), .0521 (Vernon 1999); (2) the dormancy period for such funds commenced on the date of entry of final judgment or order of dismissal, *see id.* § 117.002(1); and (3) the funds could be transferred to the Comptroller of Public Accounts only upon an order of the court with proper jurisdiction, *see id.* 117.053(b); TEX. CODE CRIM. PROC. ANN. art. 17.02. *See Melton* 993 S.W.2d at 99-102. The fact that the *Melton* holding regarding the application of specific

provisions of chapter 74 in light of the article 17.02 and chapter 117 requirements cannot be applied to unclaimed no-filed case cash bail bonds not deposited into a court registry has no bearing on whether chapter 74 applies. It simply means that, with respect to cash bail bonds not deposited in a court registry, the issues of dormancy and custodianship must be determined according to other criteria.

You next ask: "when does the three year dormancy period commence and whose responsibility and/or duty is it to report and deliver these funds to the comptroller?" Request Letter at 3.

Chapter 74 does not specifically provide when the three-year dormancy period begins for the purposes of determining when the unclaimed cash bail bonds are presumed abandoned, nor does any other statute that we have found. Obviously the date of a final judgment or order of dismissal cannot serve as the relevant date given that no case is filed. It does, however, guide us in determining the relevant date here. A final judgment or dismissal terminates the pending prosecution and the need for the cash bail bond to ensure the defendant's appearance in court. At that time, the defendant is entitled to request the return of the bail bonds. Here, the "no-file letter" that the D.A.'s office sends to the sheriff and the defendant stating that no case will be filed against the defendant operates similarly and has a similar effect. Like a final judgment or order of dismissal, the no-file letter terminates possible prosecution and, thus, the necessity for the bond to secure the defendant's appearance to answer any accusations. Thus, on the date of the no-file letter, the defendant is entitled to return of the cash bail bond and the three-year dormancy period commences. Unclaimed cash bail bonds held by the sheriff become abandoned property subject to chapter 74 after three years from the date of the no-file letter.

Chapter 72 of the Property Code requires a "holder" of property presumed abandoned to comply with the procedures of chapter 74. See TEX. PROP. CODE ANN. § 72.001(d) (Vernon 1995). A "holder" is a person who is (1) in possession of property that belongs to another, (2) a trustee, or (3) indebted to another on an obligation. Id. § 72.001(e). Under the first definition, personal physical possession is not required to be a "holder." See Melton, 993 S.W.2d at 101 (disagreeing with county clerk's argument that clerk was not a holder because he did not have personal physical possession of bonds). Because the sheriff holds and manages the cash bail bonds belonging to the defendants who tendered them, the sheriff is a "holder" for the purposes of chapter 74. Accordingly, the sheriff must comply with the procedures set out in chapter 74 of the Property Code.

You next ask about the disposition of approximately $90,766 in unclaimed liquidated certificates of deposit also held in the Trust Account. You explain that the certificates were once used as collateral for bail bondsmen and attorneys who wrote bail bonds in Tarrant County, but who do not now write bail bonds and cannot be located. We understand you to ask first whether the cash is subject to chapter 74. Assuming it is subject to chapter 74, you next ask when the three-year dormancy period begins with respect to the cash. See Request Letter at 3.

Chapter 1704 of the Occupations Code creates a county bail bond board in all counties with a population of 110,000 or more. *See* TEX. OCC. CODE ANN. § 1704.051 (Vernon 2000). The board licenses and regulates the bonding business in such a county. *See id.* § 1704.101. In a county governed by chapter 1704, no person may act as a bondsman in the county except a person who is licensed under chapter 1704 or, in certain limited circumstances, attorneys. *See id.* §§ 1704.151, .163. A person must apply for a license and, upon conditional approval of the application, an applicant must (1) if an individual "*deposit with the county treasurer* a cashier's check, certificate of deposit, cash, or cash equivalent" or (2) if a corporation, "provide to the sheriff an irrevocable letter of credit." *Id.* § 1704.160(a) (emphasis added). The deposited security is used to pay a final judgment on a forfeiture of a bail bond that the licensee has executed if the licensee fails to pay it thirty days after the date of the judgment. *See id.* § 1704.204; *see also* § 1704.203(k) as added by Act of May 25, 1999, 76th Leg., R.S., ch. 1096, § 1, 1999 Tex. Gen. Laws 3962, 3963, *amending* TEX. REV. CIV. STAT. ANN. art. 2372p-3 without reference to repeal of article 2372p-3 by Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6, 1999 Tex. Gen. Laws 1431, 2440. Tarrant County, having a population in excess of 110,000, is governed by chapter 1704. *See* 1 BUREAU OF THE CENSUS, U.S. DEP'T OF COMMERCE, 1990 CENSUS OF POPULATION: General Characteristics: Texas 4 (1992).

Before turning to your questions, we make the following two observations. First, the sheriff is not authorized by the Occupations Code to take deposits of certificates of deposit as security from licensed bondsmen. Such security is required to be deposited with the county treasurer. *See* TEX. OCC. CODE ANN. § 1704.160(a) (Vernon 2000). Second, the sheriff is not authorized to take certificates of deposit from attorneys executing bail bonds. Chapter 1704 does not require attorneys otherwise exempt from its licensing requirements to deposit any security. And articles 17.11, 17.13, and 17.14 of the Code of Criminal Procedure, governing the sheriff's authority with respect to the sufficiency of security offered by attorneys exempt from chapter 1704's licensing requirements, do not authorize the sheriff to require the pledge of collateral by an attorney acting as surety. *See Castaneda v. Gonzalez*, 985 S.W.2d 500, 503 (Tex. App.–Corpus Christi 1998, pet. denied ); Tex. Att'y Gen. Op. Nos. JC-0019 (1999) at 2, DM-483 (1998) at 7.

Turning to your first question, we conclude that unclaimed liquidated certificates of deposit may become abandoned property subject to chapter 74 of the Property Code. The unclaimed liquidated certificates of deposit are personal property. Personal property presumed abandoned under chapter 72 is subject to the provisions of chapter 74 of the Property Code. *See* TEX. PROP. CODE ANN. §§ 72.001(a), (d) (Vernon 1995).

We consider next the date on which the dormancy period for unclaimed liquidated certificates of deposit commences. While no statute establishes this date, we believe that the three-year dormancy period must commence on the date the deposit is no longer required as security under the statutory scheme. Under chapter 1704 of the Occupations Code, a bondsman who deposits certificates of deposit as security for executing bail bonds is entitled to request the return of the funds when the licensee (1) ceases the bond writing business, (2) ceases to maintain his or her bail bond license, (3) presents a release by the county bail bond board, and (4) no judgment or bond liability, actual or potential, is outstanding against the licensee. *See* TEX. OCC. CODE ANN. § 1704.210

(Vernon 2000); *see also id.* § 1704.203(k) as added by Act of May 25, 1999, 76th Leg., R.S., ch. 1096, § 1, 1999 Tex. Gen. Laws 3962, 3963. As this provision indicates, a deposit is no longer necessary when the bondsman's license has expired (and the bondsman is precluded from acting as a bondsman) and there are no judgments or bonds outstanding against the licensee that the deposit might be needed to satisfy. Such judgments and bonds may remain outstanding for some time after the bondsman's license expires. Therefore, we conclude that the dormancy date for these liquidated certificates of deposit commences as of the date the bondsman's license has expired and no judgments or bonds are outstanding. A liquidated certificate of deposit becomes abandoned property three years after this date.

Finally, we understand you to ask whether all interest earnings on the no-filed case cash bail bonds and on the liquidated certificates of deposit earned while in the Trust Account must be returned to the depositors. We conclude in the affirmative.

As a general rule, interest follows principal. *See Phillips v. Washington Legal Found.*, 524 U.S. 156, 165-66 (1998); *Sellers v. Harris County*, 483 S.W.2d 242, 243 (Tex. 1972). Interest earned on funds held in trust for private parties accrues to the fund and the owners of the fund. *See Phillips*, 524 U.S. at 172; *Sellers*, 483 S.W.2d at 243. A governmental body may impose a fee and transfer to the governmental body interest reasonably related to its services in safeguarding and investing the principal. *See Phillips*, 524 U.S. at 171 ("Our holding [that IOLTA interest belongs to private owners of principal] does not prohibit a State from *imposing* reasonable fees it incurs in generating and allocating interest income.") (emphasis added); *Sellers*, 483 S.W.2d at 244 ("By depriving the owner of a sum not reasonably related to the value of the county's services in safeguarding and investing the principal, the statute [statutory predecessor to section 117.054 of the Local Government Code] offends Article I, section 19 of the Texas Constitution . . . as well as the Fourteenth Amendment of the United States Constitution.").

Thus, interest accruing to the cash bail bonds accrues to the principal of the bonds and their owners. Furthermore, under article 17.02 of the Code of Criminal Procedure, *all* funds deposited as a cash bail bond must be refunded to the defendant once the defendant complies with the conditions of the bond. Tex. Att'y Gen. Op. No. JC-163 (1999) at 2. Thus, all interest earned on the cash bail bonds while held in the Trust Account belongs to and must be returned to the depositors.

You indicate that section 117.054 of the Local Government Code may authorize the county to retain a portion of the interest generated by the cash bail bonds. We disagree. Pursuant to section 117.054, when registry trust funds are deposited in an interest bearing account, ten percent of the interest is to be paid to the general fund of the county to compensate the county for the accounting and administrative expenses of maintaining the account. *See* TEX. LOC. GOV'T CODE ANN. § 117.054(b)(1) (Vernon 1999). The remaining interest is returned to the depositor along with the principal deposit. *Id.* § 117.054(b)(2). Attorney General Opinion DM-282 concluded that while interest earned on cash bail bonds funds belong to the depositor, a county may retain a portion of the interest in accordance with section 117.054 of the Local Government Code. *See* Tex. Att'y Gen. Op.

No. DM-282 (1994) at 3. Section 117.054, however, does not apply to cash bail bonds not deposited in a court registry. *See* Tex. Att'y Gen. Op. No. DM-396 (1996) at 5 n.7 (chapter 117 applies only to trust funds held by district or county clerk and not to trust funds held by other county officials); 35 DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 14.11 (1989); (same). Moreover, we do not believe that the county may retain any interest earned on the cash bail bonds as a reasonable compensation for its investing services in the absence of an applicable statute imposing such a service fee. *Cf. Phillips*, 524 U.S. at 172; *Sellers*, 483 S.W.2d at 244. *But see* Tex. Att'y Gen. Op. No. DM-282 (1994) at 5 (concluding county may retain an amount of interest earnings on jail inmates' funds reasonably related to county's services in absence of statutory provision).

Similarly, all interest earned on the liquidated certificates of deposit accrues to the principal of the certificates of deposit and the owners thereof. Additionally, section 1704.210 of the Occupations Code dealing with the return of the security deposited or executed to secure a licensee's bond execution provides that:

> The security returned to a license holder under Subsection (a) is equal to the amount of security deposited or executed under Section 1704.160 minus the amount of security:
>
> > (1) depleted under Section 1704.204(b) to pay judgment; and
> >
> > (2) necessary to secure any unexpired obligation on a bail bond executed by the license holder.

TEX. OCC. CODE ANN. § 1704.210 (b) (Vernon 2000). *See also* § 1704.203(k) added by Act of May 25, 1999, 76th Leg., R.S., ch. 1096, § 1, 1999 Tex. Gen. Laws 3962, 3963, *amending* TEX. REV. CIV. STAT. ANN. art. 2372p-3, § 6 without reference to repeal of article 2372p-3 by Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6, 1999 Tex. Gen. Laws 1431, 2440 ("Any portion of the deposit or trust not used to pay judgments or to secure unexpired obligations on existing bonds in force shall be returned to the licensee or his heirs or assigns upon presentment of a release by the board."). The unambiguous language of the statute requires the return of all funds not used to pay a judgment or required to secure any unexpired obligations. Neither 1704.210 or any other provision we have found authorizes retention of any interest earnings on the liquidated certificates of deposit earned while held in the Trust Account. Accordingly, we conclude that all interest earnings on the liquidated certificates of deposit must be returned to the depositors.

## S U M M A R Y

When no criminal case is filed, a county sheriff is not required to forward cash bail bonds taken by the sheriff to the county clerk or district clerk for deposit in the county's trust depository. The sheriff is authorized to maintain the no-filed case cash bail bond funds in a separate interest bearing trust account at the county depository. The county auditor need not be a signatory on that account; the county auditor, however, may require that he or she be a signatory on such account. The sheriff is authorized to return and, indeed, must return, the no-filed case cash bail bond funds to the defendant.

Unclaimed no-filed case cash bail bonds held by the sheriff may become abandoned property subject to chapter 74 of the Property Code after three years from the date of the "no-file letter" stating that no criminal case will be filed. The sheriff is the "holder" of the abandoned cash bail bonds for the purposes of complying with the procedures set out in chapter 74 of the Property Code. Unclaimed liquidated certificates of deposit securing execution of bail bonds by bondsmen and attorneys may become abandoned property subject to chapter 74 of the Property Code after three years from the date the related depositor's bail bond license expires when no judgments or bonds are outstanding against the depositor.

All interest on no-filed case cash bail bonds and on liquidated certificates of deposit earned while the funds are held by the sheriff must be returned to the depositors.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee