Bill MELTON, Treasurer of Dallas County, and Earl Bullock, Clerk of Dallas County, individually and in their official capacities, Petitioners,

v.

STATE of Texas, Respondent.

No. 98–0784.

Supreme Court of Texas.

Argued March 3, 1999.

Decided April 29, 1999.

---

James P. Allison, C. Rex Hall, Jr., Austin, for Petitioners.

Maureen Powers, David C. Mattax, John Cornyn, Linda Eads, Andy Taylor, Austin, for Respondent.

Justice O'NEILL delivered the opinion for a unanimous Court.

This case calls for us to apply provisions of the Local Government Code, the Property Code, and the Code of Criminal Procedure to delineate the duties of county officials regarding unclaimed cash bail bonds. These proceedings began when the State of Texas sued to compel the Dallas County clerk, Earl Bullock, to comply with Chapter 74 of the Property Code by reporting and delivering to the comptroller unclaimed cash bail bonds deposited by defendants into the registry of the Dallas courts.[1] Both the State and the clerk moved for summary judgment. The trial court held that unclaimed cash bail bonds are not abandoned property subject to Chapter 74, and granted summary judgment for the clerk.

The court of appeals reversed the trial court's judgment, and remanded the case to the trial court for further proceedings. We agree with the court of appeals' holding that: (1) unclaimed cash bail bonds become abandoned property subject to Chapter 74 three years from the date of final judgment in the underlying criminal prosecutions; (2) the county clerk is a "holder" obligated to report and deliver the bonds to the comptroller; (3) a court

order is necessary to trigger the clerk's duty to deliver abandoned cash bail bonds to the comptroller, but not to trigger the clerk's duty to report the abandoned bonds; and (4) material fact issues concerning the amount of unclaimed cash bail bonds in dispute preclude summary judgment. *See* 970 S.W.2d 146, 150–152. Consequently, we affirm the court of appeals' judgment, albeit on somewhat different grounds.

## I  Statutory Overview

A bail bond is a written undertaking binding an accused to appear before the appropriate authorities to answer a criminal accusation. *See* TEX.CODE CRIM. PROC. art. 17.02. The bond is in a specific monetary amount and must be executed by sureties. *Id.* In lieu of having sureties, an accused may deposit cash with the court. *Id.* Funds deposited in this manner are "cash bail bonds." These bonds are refunded when the accused complies with the conditions of the bond "and upon order of the court." *Id.* The county or district clerk is responsible for cash bail bonds deposited into the court's registry. *See* TEX. LOC. GOV'T CODE § 117.052(c)(6).

Several interrelated provisions of the Property Code and Local Government Code govern district and county clerks' duties regarding unclaimed court registry funds. Chapter 74 of the Property Code governs property that is presumed abandoned; it is designed to provide a means for absent owners to reclaim their property. *See* TEX. PROP.CODE §§ 74.501–.502, 74.504, 74.506–509. To further this purpose, Chapter 74 provides a procedure whereby persons holding property that is presumed abandoned under Chapters 72, 73, or 75, of the Property Code must annually report and deliver such property to

---

1.  The State also sued the Dallas County treasurer, Bill Melton, as the holder of certain uncashed checks. The trial court held that the checks are not unclaimed or abandoned property subject to Chapter 74 of the Property Code, and the State has not challenged this ruling on appeal. Because the State's suit against the treasurer related solely to unclaimed checks, which are not at issue here, we confine our analysis to unclaimed cash bail bonds that, in this case, are in the county clerk's possession.

the comptroller. *See* TEX. PROP.CODE § 74.301. Personal property is presumed abandoned if, after a three-year period (the "dormancy period"),

(1) the existence and location of the owner of the property is unknown to the holder of the property; and

(2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised.

TEX. PROP.CODE § 72.101(a). Section 117.002 of the Local Government Code governs when the Property Code's dormancy period begins to run for trust funds and court registry funds in the care of district and county clerks.[2] *See* TEX. LOC. GOV'T CODE § 117.002.

## II Abandonment of Cash Bail Bonds

The clerk contends unclaimed cash bail bonds cannot be abandoned property subject to Chapter 74 of the Property Code for two reasons. First, the clerk argues that the bonds cannot be presumed abandoned under section 72.101(a) because the bond owners' existence is not "unknown." Second, the clerk argues that the dormancy provision governing court registry funds does not apply to cash bail bonds, and the Property Code's three-year dormancy period does not begin to run until the court in which the bonds were deposited orders them released to the defendant. Because the cash bail bonds at issue have not been ordered released, the clerk argues that they cannot be abandoned property.

2. Section 117.002 of the Local Government Code provides, in pertinent part, that the dormancy period for registry funds begins on the later of:

(1) the date of entry of final judgment or order of dismissal in the action in which the funds were deposited;
(2) the 18 th birthday of the minor for whom the funds were deposited; or

## A  Identity of Bonds' Owners

■ The clerk contends unclaimed cash bail bonds cannot be presumed abandoned because their owners are identified defendants in criminal cases whose "existence and location" are not "unknown." We disagree. Viewed within the statutory framework, it is clear that "unknown," as used in section 72.101(a) of the Property Code, does not mean completely unidentified.

Chapter 74 of the Property Code governs the disposition of funds that are presumed abandoned under section 72.101(a). Among the comptroller's responsibilities outlined in Chapter 74 is the duty to attempt to provide notice to each reported owner of abandoned property. *See* TEX. PROP.CODE § 74.201. The notice must be provided in the county of the property owner's last known address and must contain, *inter alia*, the reported owner's name and city of last known address. *See id.* The notice statute would be nonsensical if knowledge of the owner's name and last known address meant the property could never be presumed abandoned.

In addition, we note that section 72.101(a) is phrased in the present tense; personal property is presumed abandoned if, after three years, "the [owner's] existence and location ... *is* unknown." *See* TEX. PROP.CODE § 72.101(a)(1) (emphasis added). The fact that the defendant's "existence and location" may have been "known" when the bond was filed does not mean that it is "known" after the passage of more than three years with no request from the defendant for the bond's release. We conclude that knowledge of the defendant's name and last known address at the time the bond was filed does not preclude

(3) a reasonable date established by rule by the comptroller to promote the public interest in disposing of unclaimed funds.
The cash bail bonds at issue are not deposited on behalf of a minor, nor are they subject to a date established by comptroller rule. Consequently, if the dormancy provision governing court registry funds applies to cash bail bonds, the dormancy period would commence under subsection (1).

the application of section 72.101(a). *See Eason v. Calvert*, 902 S.W.2d 160, 162 (Tex.App.—Houston [1 st Dist.] 1995, writ denied) (holding that funds were presumed abandoned under section 72.101, even though they were deposited by an identifiable person).

## B Commencement of the Dormancy Period

■ We now turn to the primary issue, that is, when the Property Code's three-year dormancy period begins to run for unclaimed cash bail bonds. The clerk claims that, because article 17.02 of the Code of Criminal Procedure allows the release of cash bail bonds only "upon order of the court," the dormancy period does not begin to run until the trial court signs an order releasing the funds. This argument rests upon the premise that a 1997 amendment to section 117.002 of the Local Government Code removed cash bail bonds from the provisions of that section governing commencement of the Property Code dormancy period. We disagree with this premise.

Chapter 117 of the Local Government Code governs the administration of funds deposited into court registries. Section 117.002 provides, in pertinent part:

Any funds deposited under this chapter, *except cash bail bonds*, that are presumed abandoned under Chapter 72, 73, or 75, Property Code, shall be reported and delivered by the county or district clerk ... without further action by any court. The dormancy period for funds deposited under this chapter begins on ...

(1) the date of entry of final judgment or order of dismissal in the action in which the funds were deposited.

TEX. LOC. GOV'T CODE § 117.002 (emphasis added). If the phrase "except cash bail bonds" applies to the second sentence of section 117.002 (the dormancy provision), the clerk's position might have merit. The history of section 117.002 reveals, however, that the Legislature did not intend to re-

quire a release order for the Property Code's three-year dormancy period to commence.

Before 1997, section 117.002 provided:

Any funds deposited under this chapter that are presumed abandoned under Chapter 72, 73, or 75, Property Code, shall be reported and delivered by the county or district clerk ... without further action by any court. The dormancy period for funds deposited under this chapter begins on ...

(1) the date of entry of final judgment or order of dismissal in the action in which the funds were deposited.

*See* Act of May 7, 1991, 72 nd Leg., R.S., ch. 153, § 26, 1991 Tex. Gen. Laws 750, codified as amended at TEX. LOC. GOV'T CODE § 117.002. In 1997, the Legislature amended the first sentence of section 117.002 to specifically exclude cash bail bonds. The second sentence, governing commencement of the Property Code's dormancy period, remained unchanged.

The clerk argues that, by this amendment, the Legislature chose to exempt cash bail bonds entirely from section 117.002, including the provision governing commencement of the dormancy period. This is because, the clerk claims, the Legislature always intended the trial courts in criminal cases to have control over the bonds, and never intended cash bail bonds to be within the scope of section 117.002. The State, on the other hand, claims that the amendment exempts cash bail bonds only from the automatic reporting and delivery requirement and does not affect the remainder of section 117.002. We conclude that the statute's language and history, the statutory framework, and the bill analysis for the 1997 amendment, support the State's position.

Under the Property Code, holders are required to annually report and deliver abandoned property to the comptroller. *See* TEX. PROP.CODE §§ 74.101, 74.301. Under the Local Government Code, however, payment from registry funds must be

made *"under an order of the court ... in which the funds were deposited."* TEX. LOC. GOV'T CODE § 117.053(b) (emphasis added). Thus, before the Legislature enacted section 117.002, it was unclear whether court clerks could transfer abandoned funds to the State without a court order. In 1991, the Legislature added section 117.002 to the Local Government Code. That section provided that registry funds presumed abandoned under the Property Code "shall be reported and delivered ... *without further action by any court."* See Act of May 7, 1991, 72 nd Leg., R.S., ch. 153, § 26, 1991 Tex. Gen. Laws 750, codified as amended at TEX. LOC. GOV'T CODE § 117.002 (emphasis added). Thus, the Legislature made clear that the clerk's duty to report and deliver abandoned funds was automatic and did not require a court order.

In 1997, however, the Legislature perceived an apparent conflict between the 1991 automatic transfer provision and article 17.02 of the Code of Criminal Procedure, which provides for the refund of cash bail bonds "upon order of the court." See HOUSE COMMITTEE ON COUNTY AFFAIRS, 75 th Leg., Bill Analysis for H.B. 2769, at 1 (April 2, 1997). Accordingly, the Legislature amended section 117.002. The amendment's purpose was not to entirely exempt abandoned cash bail bonds from transfer to the State, but to "exempt cash bail bonds from transfer of unclaimed funds ... *until released by the court."* Id. (emphasis added). Nothing in the amendment's express language or legislative history indicates an intent to exempt cash bail bonds from the statute's dormancy provisions. If the Legislature's intent was to exempt cash bail bonds from the entire section, it could have clearly so provided.

Moreover, the clerk's argument that the dormancy period should not commence until the court releases the bonds is inconsistent with the purposes of Chapter 74 of

the Property Code. Typically, cash bail bonds are only ordered released when the defendant takes some affirmative action, such as presenting a motion or a copy of the final judgment to the appropriate county official. Absent some action by the defendant, the funds remain in the court's registry. If a court order was required for the dormancy period to commence, as the clerk proposes, the dormancy period would never begin to run for bonds that were unclaimed, and they would remain in the court's registry in perpetuity. Such a result would thwart the intent underlying Chapter 74, which is to return abandoned property to its rightful owner.

We agree with the court of appeals that the 1997 amendment relates only to the automatic reporting and delivery requirement, and does not affect the dormancy provision. See 970 S.W.2d at 150. Thus, we hold that the three-year dormancy period for unclaimed cash bail bonds begins to run on the date of the final judgment or order of dismissal in the underlying criminal prosecution.

## III Holder Status

■ We next consider whether the county clerk is a "holder" of the abandoned funds and thus a proper party to this suit.[3] The Property Code requires a "holder" of property presumed abandoned to comply with the procedures of Chapter 74. See TEX. PROP.CODE § 72.001(d). A "holder" is a person who is (1) in possession of property that belongs to another, (2) a trustee, or (3) indebted to another on an obligation. See TEX. PROP.CODE § 72.001(e). The county clerk argues that, although he is responsible for maintaining cash bail bond records and has certain duties to disburse the bond money, he is not a "holder" of the bonds because he does not personally have physical possession of the funds and lacks the authority to transfer them to the State. We disagree.

---

3. The trial court ordered Dallas County, as opposed to the county clerk, to file otherwise appropriate reports under Chapter 74, imply-ing that the county clerk was not a proper party to the suit.

Section 117.052(c) of the Local Government Code provides that the clerk is "responsible" for registry funds, which includes cash bail bonds. Tex. Loc. Gov't Code § 117.052(c)(6). Section 117.0521 states that a clerk acts in a "custodial capacity" in relation to registry funds. Tex. Loc. Gov't Code § 117.0521. Finally, section 117.052(a) requires the clerk to place money deposited into the court registry in the county's depository if the clerk is to have "legal custody" of the money for more than three days. Tex. Loc. Gov't Code § 117.052(a). We hold that the county clerk's statutory custody and control over cash bail bonds confers holder status on the clerk.[4] We now direct our attention to the 1997 amendment's effect on the clerk's duties to report and deliver abandoned cash bail bonds to the comptroller.

### IV  Reporting and Delivery

Section 117.002, as amended, requires any funds, "except cash bail bonds," deposited under Chapter 117 and presumed abandoned to be reported and delivered by the clerk "without further action by any court." Tex. Loc. Gov't Code § 117.002. According to the court of appeals, the amendment excluding cash bail bonds from section 117.002's automatic reporting and delivery requirement facially appears to say that such bonds are not subject to being delivered or reported to the comptroller without a court order. *See* 970 S.W.2d at 151. The court of appeals held that cash bail bonds need not be delivered to the comptroller unless the court in which the funds were deposited so orders, but concluded that requiring a court order for the clerk to report what is being held would thwart the legislative purpose with regard to the handling of abandoned property and lead to an absurd result. *Id.* Consequently, the court of appeals held that a court order is not necessary to trigger a holder's duty to report cash bail

bonds. Although we agree with this result, we do not agree with the court of appeals' conclusion that, because the statute was amended to exclude cash bail bonds from automatic reporting and delivery, court action was then required to trigger these duties.

■ The 1997 amendment simply removed cash bail bonds from the automatic reporting and delivery requirements of section 117.002. Therefore, we must look elsewhere to determine a holder's duties with respect to those funds. Section 74.101(a) of the Property Code requires a holder to report property that is presumed abandoned:

> Each holder who on June 30 holds property that is presumed abandoned under Chapter 72, 73, or 75 ... *shall file a report of that property* on or before the following November 1.

Tex. Prop.Code § 74.101(a) (emphasis added). We are aware of no statutes that restrict or conflict with a clerk's duty under section 74.101(a) to annually report cash bail bonds that are presumed abandoned. Accordingly, we hold that the clerk must comply with the annual reporting requirements of section 74.101(a). With respect to delivery, we are faced with the same apparent conflict that existed before section 117.002 was enacted. Section 74.301(a) of the Property Code requires a holder to deliver abandoned property to the comptroller along with the report required by section 74.101. *See* Tex. Prop.Code § 74.301(a). Article 17.02 of the Code of Criminal Procedure, however, provides that cash bail bonds shall only be released "upon order of the court." *See* Tex.Code Crim. Proc. art. 17.02. It is this apparent conflict that we must resolve.

■ Section 74.301 of the Property Code is a general provision that requires a holder to deliver abandoned property to the comptroller. *See* Tex. Prop.Code

4.  Like the court of appeals, we note that the county clerk may not be the only appropriate "holder" for purposes of reporting and delivering abandoned cash bail bonds. *See* 970 S.W.2d at 152, n. 4.

§ 74.301. Article 17.02 of the Code of Criminal Procedure, on the other hand, relates specifically to the release of cash bail bonds deposited in the courts' registry. *See* TEX.CODE CRIM. PROC. art. 17.02. If a general provision conflicts with a special provision, they should be construed, if possible, so that effect is given to both. *See* TEX. GOV'T CODE § 311.026(a). When one statute deals with a subject in comprehensive terms, like section 74.301(a) of the Property Code, and another deals with a portion of the same subject in a more particular way, like article 17.02 of the Code of Criminal Procedure, the specific will prevail. *See* TEX. GOV'T CODE § 311.026(b). Because article 17.02 speaks specifically to the release of cash bail bonds, it controls over the more general Property Code provisions regarding delivery of abandoned property. Accordingly, we hold that the clerk has no duty to deliver abandoned cash bail bonds until the court in the underlying criminal prosecution has ordered their release.

■ Who, then, may petition the court for the abandoned bonds' release? The court of appeals concluded that

> *the State,* at any time following the expiration of the dormancy period, either before or after receipt of the report, *may petition the court* that entered the final judgment in the underlying criminal prosecution to order the funds delivered to the comptroller.

970 S.W.2d at 151 (emphasis added). Although no specific statute directly addresses the issue, the court of appeals' holding comports with the general statutory scheme that places ultimate responsibility for enforcing the abandoned property provisions with the comptroller. For example, Chapter 74 of the Property Code contains an entire subchapter empowering the comptroller to enforce the reporting and delivery of abandoned funds. *See* TEX. PROP.CODE §§ 74.701–710. In particular, the Legislature has given the comptroller the authority to examine the records of any holder to determine whether required reports have been made, and to sue to compel holders to deliver or report abandoned property. *See* TEX. PROP.CODE §§ 74.702, 74.709. Once property is presumed abandoned, the comptroller assumes responsibility for it and essentially steps into the shoes of the absent owner. *See State v. Texas Elec. Serv. Co.,* 488 S.W.2d 878, 881 (Tex.Civ.App.—Fort Worth 1972, no writ). Given the nature of the comptroller's powers and responsibilities, we agree that the comptroller is the proper party to seek court orders releasing cash bail bonds that are presumed abandoned.

## V Material Fact Issues Exist

■ The State's summary judgment motion ´sought the transfer of a certain amount of cash bail bonds based upon a State audit. The clerk's summary judgment evidence, however, showed that some of the bonds sought by the State had been forfeited or refunded and were thus not subject to transfer. We agree with the court of appeals that the parties' summary judgment proof reflects the existence of a genuine issue of material fact regarding the amount of unclaimed or abandoned cash bail bonds in dispute for the period at issue. Therefore, summary judgment deciding the amount of cash bail bonds to be reported to the comptroller would have been improper on the summary judgment record.

Accordingly, we affirm the court of appeals' judgment remanding this case to the trial court for further proceedings.