OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 12, 2002

The Honorable Dustanna Rabe
Hopkins County Attorney
110 Main Street
Sulphur Springs, Texas 75482

Opinion No. JC-0463

Re: Disposition of funds previously accumulated
under pretrial diversion agreements (RQ-0437-JC)

Dear Ms. Rabe:

You ask about the disposition of funds previously accumulated under unauthorized pretrial diversion agreements.[1] We conclude that the accumulated "pretrial diversion fees" and the interest earned on those fees must be returned to the individuals who paid those fees. We also conclude that unclaimed fees and interest earnings on those fees may become abandoned property that must be reported and delivered to the Comptroller of Public Accounts.

Your request is a follow-up to Attorney General Opinion JC-0042, in which this office concluded that a prosecutor, such as the Hopkins County Attorney, may not enter into an agreement with an offender whereby the prosecutor will defer prosecution in exchange for the offender's agreement to contribute money to a public or private organization. *See* Tex. Att'y Gen. Op. No. JC-0042 (1999). In Attorney General Opinion JC-0119, this office reiterated the conclusion reached in Attorney General Opinion JC-0042: "[A] prosecutor may not, under any circumstances, condition participation in a pretrial diversion program upon a contribution to a nonprofit entity." Tex. Att'y Gen. Op. No. JC-0119 (1999) at 2. Your predecessor in office implemented a program that allowed certain individuals charged with misdemeanor crimes to enter into a pretrial diversion agreement in lieu of prosecution. *See* Request Letter, *supra* note 1, at 1. Under the program, an individual was placed on "probation" and monitored solely by the county attorney's office. *See id.* The pretrial agreement required the individual to pay a pretrial diversion "fee" that was deposited into a "pretrial account" established by your predecessor. *See id. But see* Tex. Att'y Gen. Op. No. JC-0042 (1999) at 1 ("The prosecutor requires, as a quid pro quo, the offender to *contribute to an organization selected by the prosecutor,* which may be governmental . . . or private . . . .") (emphasis added). This account has a balance of $26,470. *See* Request Letter, *supra* note 1, at 1. In light of Attorney General Opinion JC-0042, you believe the funds in the "pretrial account" established by the previous county attorney "may have been collected inappropriately," and you are concerned about the disposition of the funds. *See id.* at 2.

---

[1]*See* Letter from Honorable Dustanna Rabe, Hopkins County Attorney, to Honorable John Cornyn, Texas Attorney General (Sept. 18, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

You ask:

> 1) [W]hat do you recommend the County Attorney's office do with money that remains in a pre-trial diversion fund set up by the previous county attorney?

> 2) In the event your response is [that] the money collected shall be returned to those who contributed to the account, what shall be done if we cannot locate complete records indicating who has paid into the account[?]

> 3) [W]hat shall be done with any interest that has accrued on the account[?]

Request Letter, *supra* note 1, at 1.

With respect to your first question, we conclude that pretrial diversion fee moneys that remain in the pretrial diversion fund must be returned to the individuals who paid those fees. *See Camacho v. Samaniego*, 954 S.W.2d 811(Tex. App.–El Paso 1997, pet. denied) (holding that bail bond companies were entitled to refund of the unauthorized bail bond filing fees collected by sheriff from companies). They do not belong to the county attorney's office nor to the county because the county attorney was not authorized to collect the pretrial diversion fees. *See id.* at 825 ("A tax or fee collected without statutory authority should not be considered the property of the governmental entity."). We are unaware of any statutory authority—and you do not direct us to any—that would allow or require the county attorney's office or the county to retain these funds. *Cf.* TEX. GOV'T CODE ANN. § 54.745 (Vernon 1998) (providing that nonrefundable filing fee collected under pretrial diversion program operated in El Paso County must be deposited in county's general fund).

We do not believe the "voluntary payment rule" precludes the return of the pretrial diversion fees. According to this rule, the fact that a fee is not authorized does not necessarily mean that a person who has paid the fee is entitled to a refund. *See* Tex. Att'y Gen. Op. No. JC-0286 (2000) at 4. Texas courts have consistently held that voluntary payment of an illegal tax or fee, based on a mistake of law, will not support a claim for repayment. *See Camacho*, 954 S.W.2d at 825-26 (citing cases); *see also* Tex. Att'y Gen. Op. No. JC-0286 (2000) at 5 ("If the equipment dealer here acted under the mistaken conclusion that he was legally required to prepay taxes in 1999, that would have been a mistake of law."). A person who has voluntarily paid an illegal tax or fee "can receive a refund only upon a showing that the payment resulted from fraud, mutual mistake of fact, or duress, whether implied or express." *Camacho*, 954 S.W.2d at 826. We have found no instance in which a Texas court has applied the voluntary payment rule to funds collected by a prosecutor directly from individuals charged with criminal misconduct in lieu of prosecution, as involved here. But even assuming that a court would apply the rule in this context, we believe a court would hold that the individuals who paid the pretrial diversion fees were entitled to repayment because the fees were paid under duress. Failure to pay the pretrial diversion fees would have had a serious detrimental

effect—prosecution—on the individuals charged with misdemeanors; and the county attorney could impose this detriment on the individuals without recourse to the courts. *See id.* at 825.

Similarly, in *Camacho*, the El Paso Court of Appeals held that bail bond companies were entitled to refund of illegal fees paid to the sheriff on each misdemeanor and surety bond issued by these companies because the fees were paid under duress. *See id.* at 814, 825-26. The *Camacho* court, after reviewing the cases that addressed the repayment of illegal taxes or fees, identified two elements that distinguished a fee or tax paid under duress from a voluntary payment: (1) the type of detriment that results to the taxpayer from a failure to pay; and (2) the type of mechanism available to the governmental entity to ensure payment. *See id.* at 826. The *Camacho* court noted that the first element is met if failure to pay the tax or fee will foreclose the ability of a business to continue operation, or cause financial loss or closure of the business. *See id.* With respect to the second element, the court explained that "[i]f the [governmental] entity has to seek payment through the courts, such as a suit to collect back property taxes, then no duress is present," but "[i]f the governmental authority can impose a penalty without recourse to the courts, however, then duress is present." *Id.* In the case before it, the *Camacho* court concluded that the first element was met because failure to pay the bail bond fee would have prevented the bail bond companies from issuing surety bonds, *i.e.*, they could not conduct their business. *See id.* at 827. The second element was also met because failure to pay the fee would have meant that the surety bond would not be processed by the sheriff. *See id.* In other words, the county could impose the penalty without recourse to the courts. *See id.*

Here, failure to pay the pretrial diversion fees would have resulted in criminal prosecution of individuals charged with misdemeanors. And this penalty—the prosecution itself—could be imposed unilaterally by the county attorney. Therefore, there was "duress." Thus, even if the voluntary payment rule applied here, which is doubtful, individuals who paid the fees would be entitled to a refund.

In answer to your third question regarding the disposition of interest earnings, we conclude that interest earned on the pretrial diversion fees deposited in the pretrial account must also be returned to the individuals who paid those fees. Under the common law, interest follows principal, or, more poetically, "'[I]nterest shall follow the principal, as the shadow the body.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 165-66 (1998) (quoting *Beckford v. Tobin*, 1 Ves. Sen. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749)). Texas courts follow the common-law rule. *See Sellers v. Harris County*, 483 S.W.2d 242, 243 (Tex. 1972); *Lawson v. Baker*, 220 S.W. 260, 272 (Tex. Civ. App.–Austin 1920, writ ref'd); *accord Phillips*, 524 U.S. at 165-66. As the Texas Supreme Court has stated, "Interest . . . is an increment that accrues" to the principal fund earning it, and, unless lawfully separated from the principal, becomes part of the principal. *Sellers*, 483 S.W.2d at 243. Thus, the interest accruing to the "pretrial account" accrues to the "principal" of the fees and the individuals who paid them. In the absence of a statutory provision allowing the retention of the interest or any part of it, all the interest must be returned to those who paid the "principal" or the pretrial diversion fees. *See* Tex. Att'y Gen. Op. No. JC-0195 (2000) at 11 (interest accruing to cash bail bonds accrues to principal of bonds and their owners; county may not retain any interest earned on cash bail bonds).

Finally, you ask about the disposition of the funds in the pretrial account if your office "cannot locate complete records indicating who has paid into the [pretrial] account." Request Letter, *supra* note 1, at 1. You note that "[w]ithout complete records, the possibility exists there will be unidentifiable funds remaining in the account." *Id.*

The county attorney's office must, of course, make a reasonable effort to return the pretrial diversion fees and the interest earned on those fees to the individuals who paid the fees. But assuming those individuals cannot be located or are unknown, we conclude that those funds may become abandoned property that must be reported and delivered to the Comptroller of Public Accounts pursuant to chapter 74 of the Property Code. *See* TEX. PROP. CODE ANN. §§ 74.001-.710 (Vernon 1995 & Supp. 2002). Chapter 74 of the Property Code governs property that is presumed abandoned and is "designed to provide a means for absent owners to reclaim their property." *Melton v. State*, 993 S.W.2d 95 (Tex. 1999). In furtherance of that purpose, chapter 74 sets out a procedure whereby a person holding property that is presumed abandoned pursuant to chapters 72, 73, or 75 of the Property Code must annually report and deliver such property to the Comptroller of Public Accounts. *See* TEX. PROP. CODE ANN. §§ 74.001 (applicability); .101 (holder required to file property report with Comptroller); .201 (Comptroller to give notice after report filed); .301 (delivery of property to Comptroller) (Vernon Supp. 2002). In general, personal property is presumed abandoned if for longer than three years: (1) the existence and location of the owner of the property is unknown to the holder of the property; and (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised. *See id.* § 72.101 (Vernon 1995). Once property is presumed abandoned, the Comptroller of Public Accounts assumes responsibility for it and, in effect, steps into the absent owner's shoes. *See Tex. Dep't of Banking v. Mount Olivet Cemetery*, 27 S.W.3d 276, 284 (Tex. App.–Austin 2000, pet. denied). "The purpose of removing abandoned property from the possession of the holder is to relieve that holder of any further liability with regard to such property and place it in the hands of the State, thereby providing a means for the absent owner to reclaim the abandoned property." *Mt. Olivet*, 27 S.W.3d at 284.

## S U M M A R Y

Unauthorized accumulated "pretrial diversion fees" and the interest earned on the fees must be returned to the individuals who paid those fees. Unclaimed fees and interest earnings may become abandoned property that must be reported and delivered to the Comptroller of Public Accounts pursuant to chapter 74 of the Property Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee