

# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

April 17, 2003

The Honorable Carole Keeton Strayhorn
Comptroller of Public Accounts
Lyndon B. Johnson Building
P.O. Box 13528
Austin, Texas 78711-3528

Opinion No. GA-0061

Re: Whether certain unauthorized fees collected by counties and municipalities that cannot be returned to the persons who paid the fees constitute taxes that must be remitted to the Comptroller under chapter 111 of the Tax Code or abandoned property governed by the Property Code (RQ-0613-JC)

Dear Comptroller Strayhorn:

You ask about the proper disposition of certain fees collected by counties and municipalities pursuant to unauthorized pretrial diversion agreements. Generally, you ask whether fees, and interest earned on the fees, that cannot be returned to the persons who paid the fees, constitute taxes that must be remitted to the Comptroller under chapter 111 of the Tax Code or abandoned property governed by the Property Code.

By way of background, you explain that in 1999 this office concluded that, in the absence of express statutory authority, a prosecutor may not enter into an agreement with a defendant whereby the prosecutor defers prosecution in exchange for the defendant's agreement to contribute money to a nonprofit organization. *See* Tex. Att'y Gen. Op. No. JC-0042 (1999); *see also* Tex. Att'y Gen. Op. No. JC-0119 (1999) (county attorney may not condition deferral of prosecution on defendant's payment of money to nonprofit organization incorporated by county attorney and assistant county attorneys). Subsequently, in conducting audits, your office "encountered . . . programs" under which "a prosecutor collected a fee pursuant to an unauthorized pretrial diversion agreement," and your office "began to assess municipalities and/or counties for funds accumulated from the unauthorized fees."[1]

In 2002, the Attorney General was asked to address the proper disposition of funds accumulated pursuant to unauthorized pretrial diversion agreements. *See* Tex. Att'y Gen. Op. No. JC-0463 (2002). This office concluded that the individuals who paid the fees were entitled to

---

[1]Letter from Billy C. Hamilton, Deputy Comptroller, Comptroller of Public Accounts, to Honorable John Cornyn, Texas Attorney General at 1-2 (Sept. 25, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

refunds of the fees and interest earned on the fees. *See id.* at 2-3. In the event a person who paid a fee could not be located, the unclaimed fee and interest would become abandoned property that must be delivered to the Comptroller pursuant to chapter 74 of the Property Code. *See id.* at 4.

You agree that unauthorized pretrial diversion agreement fees and interest on those fees must be refunded to the individuals who paid the fees. *See* Request Letter, *supra* note 1, at 2. You disagree, however, that unclaimed fees should be treated as abandoned property under chapter 74 of the Property Code. *See id.* Rather, your office takes the position that a county or municipality that is unable to refund an unauthorized fee must remit the unclaimed fee and interest to the Comptroller as "local revenue funds," *see id.,* based on section 111.016 of the Tax Code, which provides in pertinent part that "[a]ny person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected." TEX. TAX CODE ANN. § 111.016(a) (Vernon 2001). Apparently, counties and municipalities disagree that these monies are subject to section 111.016.[2]

In light of this disagreement, you ask whether the unauthorized fees are taxes or fees subject to chapter 111 of the Tax Code. If we conclude that chapter 111 of the Tax Code does not apply to the unauthorized fees, you pose a series of questions about how the monies should be handled under the Property Code.

In construing both the Tax Code and the Property Code, we must attempt to give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, 311.023 (Vernon 1998); *Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex. 1997). To do so, we construe the Codes according to their plain language. *See RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607-08 (Tex. 1985); *see also Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex. 1999) (where codified statute is unambiguous, plain meaning rule applies even if codification is inconsistent with its statutory predecessor). When a statute is ambiguous, we may consider, among other things, the object sought to be attained, the circumstances under which a statute was enacted, legislative history, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also id.* § 311.021(2)-(4) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").

## I.      Chapter 111 of the Tax Code

You first ask whether unauthorized pretrial diversion agreement fees are subject to chapter 111 of the Tax Code. Specifically, you ask: "Are the local revenue fees that the comptroller administers a 'fee' within the meaning of" section 101.003(13) of the Tax Code, "with the result that

---

[2]*See* Brief from Bennett Sandlin, Assistant General Counsel, Texas Municipal League, to Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General (Nov. 19, 2002) (on file with Opinion Committee).

they are considered a 'tax' for purposes of'' section 111.0022 of the Tax Code. *See* Request Letter, *supra* note 1, at 3 (Question 1).[3]

Sections 101.003(13) and 111.0022 are found in title 2 of the Tax Code, which governs state taxation. Section 101.003, a definitional provision, is found in subtitle A of title 2. Section 101.003(13) defines the word "tax" for purposes of title 2 to mean "a *tax, fee,* assessment, charge, or other amount *that the comptroller is authorized to administer*." TEX. TAX CODE ANN. § 101.003(13) (Vernon 2001) (emphasis added). Section 111.0022 is found in subtitle B of title 2, which governs the collection and enforcement of taxes. Chapter 111 sets forth collection procedures. Section 111.0022 defines the scope of subtitles A and B, providing that "[t]his subtitle and Subtitle A of this title apply to the administration, collection, and enforcement *of other taxes, fees,* and charges, including penalties, or other financial transactions, *that the comptroller is required or authorized to collect or administer under other law,* to the extent that the other law does not conflict with this subtitle or Subtitle A of this title." *Id.* § 111.0022 (emphasis added).

According to their plain language, sections 101.003(13) and 111.0022 define the reach of subtitles A and B of title 2 by reference to taxes and fees that the Comptroller is required or authorized to collect or administer under the Tax Code or other law. *See id.* §§ 101.003(13), 111.0022; *see also Harris County v. Proler,* 29 S.W.3d 646, 649 (Tex. App.– Houston [14th Dist.] 2000, no pet.) (under section 101.003(13) "a tax is a fee that the comptroller is authorized to administer. The fee, and the administration of the fee, must go hand in hand in order for the fee to qualify as a tax."). In order for a fee to constitute a tax under these statutes, the Comptroller must have a statutory duty to collect or administer it.

The Comptroller is required or authorized by statute to administer various fees collected by county and municipal courts and other local officials.[4] Clearly, fees that are collected or

---

[3]In answering your questions, we address only the status of fees collected by counties and municipalities pursuant to unauthorized pretrial diversion agreements. In your first question, you refer to the fees as "local revenue fees." *See* Request Letter, *supra* note 1, at 3. At other times, your letter refers to them as "unauthorized court costs, fees or fines" or as "local revenue funds." Your letter does not define these terms, and we do not use them. We have found only one statutory reference to the term "local revenue fund." *See* TEX. TAX CODE ANN. § 111.064(a)-(c), (f) (Vernon 2001) (establishing the rate of interest for tax refunds, but providing that it does not apply to a "local revenue fund"). As used in that statute, the term "local revenue fund" includes "a court cost, a fee, a fine, or a similar charge collected by a municipality, a county, or a court of this state and remitted to the comptroller." *Id.* § 111.064(f). The term appears to refer to court costs, fees, fines, and charges that a municipality, county, or court is required to collect and remit to the Comptroller pursuant to statute.

[4]*See, e.g.,* TEX. CODE CRIM. PROC. ANN. arts. 56.56 (Vernon Supp. 2003) (requiring officer collecting crime victims compensation fund costs in a municipal, justice, county, or district court case to deposit the funds in the municipal or county treasury and to send funds to the Comptroller), 56.57(a) ("*The comptroller shall deposit* the funds received under Article 56.56 and all other moneys credited to the fund by any other provision of law in the compensation to victims of crime fund.") (emphasis added), 102.011(f) ("The custodian of a municipal or county treasury who receives fees imposed under this article for services performed by peace officers employed by the state *shall forward the fees to the comptroller of public accounts* by the last day of the month following each calendar quarter after deducting four-fifths of the amount of each fee received for a service performed under Subsection (a)(1) or (a)(2) of this article, in a manner

(continued...)

administered by the Comptroller pursuant to statute are taxes within the meaning of sections 101.003(13) and 111.0022. *See Cornyn v. County of Hill*, 10 S.W.3d 424, 428 (Tex. App.–Waco 2000, no pet.) (court fees collected by county and overpaid to Comptroller pursuant to article 102.011 of the Code of Criminal Procedure were taxes subject to chapter 111 of the Tax Code because they were fees the Comptroller was "authorized to collect . . . under other law" within the meaning of section 111.0022). On the other hand, sections 101.003(13) and 111.0022 do not extend to fees that the Comptroller is not authorized to collect or administer, such as fees that are collected and administered solely by local officials. *See Proler*, 29 S.W.3d at 649 (sheriff's fee set by commissioners court under section 118.131 of the Local Government Code was not a tax within the meaning of section 101.003(13) of the Tax Code). Whether the Comptroller is required or authorized to collect or administer a particular fee requires an analysis of the specific statute governing the fee and the Comptroller's duty with respect to the fee. *See id.* (holding that Comptroller's duty to compile data about sheriff's fee set by commissioners court under section 118.131 of the Local Government Code was not a duty to administer the fee and did not support finding that fee was a tax under section 101.003(13) of the Tax Code).

The request letter argues that "[b]ecause the Comptroller administers the various court costs, fees, and fines that the municipalities and counties impose, . . . local revenue funds fall within the scope of Section 111.016." Request Letter, *supra* note 1, at 2. But the letter does not identify a particular statute that authorizes the Comptroller to collect or administer the fees at issue, and we are not aware of one. Indeed, this query involves fees that counties and municipalities have collected pursuant to unauthorized pretrial diversion agreements – fees that are not authorized by any statute. It is not sufficient for purposes of sections 101.003(13) and 111.0022 of the Tax Code that the Comptroller is authorized to collect or administer other fees assessed by courts and other local officials in connection with the adjudication of offenses.

For these reasons, the unauthorized pretrial diversion agreement fees at issue here are not taxes or fees for purposes of sections 101.003(13) and 111.0022 of the Tax Code. Given this conclusion, we do not reach your second question, which is premised on an affirmative answer to your first question. *See id.* at 3 (Question 2) ("If your answer [to the question about sections 101.003(13) and 111.0022] is 'yes,' our second question is this: Does Tax Code, Sec. 111.016 apply to these fees . . . ?").

With respect to the Tax Code, you also ask about unauthorized pretrial diversion agreement fees that the Comptroller's office has already collected from counties and municipalities: "Should

---

[4](...continued)
directed by the comptroller.") (emphasis added); TEX. LOC. GOV'T CODE ANN. §§ 118.015(b) (Vernon 1999) ("A county clerk who collects a fee under this section for a certified copy of a birth certificate shall deduct 20 cents of that fee to apply to the clerk's administrative costs and *remit $1.80 of that fee to the comptroller for deposit* in the work and family policies fund.") (emphasis added), 118.018(c) (Vernon Supp. 2003) (requiring county clerk who collects a marriage license fee to remit part of the fee "*to the comptroller for deposit* in the family trust fund") (emphasis added), 118.022(b) (Vernon Supp. 2003) (requiring county clerk to send part of each fee for a marriage license or declaration of informal marriage to the Comptroller who "*shall deposit the money* . . . to the credit of the child abuse and neglect prevention trust fund") (emphasis added).

we refund the amounts automatically to cities or counties or may we refund only if a refund claim is submitted pursuant to Section 111.104 of [the] Texas Tax Code?" *Id.* at 4 (Question 8). You explain that your office requires a refund claim because it believes that "subsection (e) of Section 111.104 applies to all taxes and fees collected or administered by the comptroller." *Id.* In addition, your office requires "the submission of evidence that the money has been refunded to the person from whom it was collected" pursuant to subsection (f). *See id.* You ask, "Shall we continue to require that proof?" *Id.*

Section 111.104 authorizes the Comptroller to refund "an amount of tax, penalty, or interest [that] has been unlawfully or erroneously collected." TEX. TAX CODE ANN. § 111.104(a) (Vernon 2001). Under section 111.104, a "tax refund claim may be filed with the comptroller by the person who paid the tax or by the person's attorney, assignee, or other successor," and the claim must be written and must include certain pertinent information. *Id.* § 111.104(b)-(c). Subsection (f) provides that "[n]o taxes, penalties, or interest may be refunded to a person who has collected the taxes from another person unless the person has refunded all the taxes and interest to the person from whom the taxes were collected." *Id.* § 111.104(f).

Importantly, subsection (e) provides that section 111.104 "applies to all taxes and license fees *collected or administered* by the comptroller, except the state property tax." *Id.* § 111.104(e) (emphasis added); *see also Cornyn v. County of Hill*, 10 S.W.3d at 428 (when read together with section 111.0022, "section 111.104 requirements for refunds apply to taxes or fees required to be collected by the comptroller"). As we have concluded, the monies at issue are neither taxes nor fees within the meaning of section 101.003(13) or section 111.0022 because the Comptroller is not required or authorized to collect or administer them. It follows from this conclusion that the monies are not "taxes . . . collected or administered by the comptroller" within the meaning of section 111.104(e). Because section 111.104 does not apply to the monies at issue, the Comptroller is not authorized to require counties and municipalities to apply for refunds of such monies under section 111.104 or to comply with section 111.104(f).

You also ask whether the statute of limitations in section 111.201 of the Tax Code applies to unauthorized pretrial diversion agreement fees that the Comptroller's office has already collected from counties and municipalities: "Currently, we apply the four-year statute of limitations to amounts collected from local revenue funds. . . . If amounts are to be refunded to municipalities and counties . . . does the four-year statute of limitations apply to limit the time period of funds which must be refunded?" Request Letter, *supra* note 1, at 5 (Question 9). Section 111.201 provides that "[n]o tax imposed by this title may be assessed after four years from the date that the tax becomes due and payable." TEX. TAX CODE ANN. § 111.201 (Vernon 2001). Section 111.107, which you do not cite in your letter, establishes time limitations for tax-overpayment refund requests. *See id.* § 111.107. Because the fees at issue are not taxes for purposes of chapter 111 of the Tax Code, the time limitations set out in chapter 111 of the Tax Code do not apply to them.

## II.      Chapters 72, 74 and 76 of the Property Code

Your remaining questions pertain to how unclaimed fees should be handled under the Property Code. Before turning to your questions, we briefly review the statutory scheme. Under chapter 72 of the Property Code, a county or municipality that possesses an unauthorized fee that is the property of the individual who paid the fee is the "holder" of the property. *See* TEX. PROP. CODE ANN. § 72.001(e) (Vernon Supp. 2003). Personal property is presumed abandoned after three years. *See id.* § 72.101(a) (Vernon 1995). Chapter 74 requires a holder of property assumed abandoned under chapter 72 to file a report of that property and to deliver it to the Comptroller within a certain time frame. *See id.* §§ 74.001, 74.101, 74.301 (Vernon Supp. 2003). The Comptroller is charged with safekeeping the property, providing notice to its owner, and reviewing ownership claims. *Id.* §§ 74.201-.205, 74.304(a), 74.501-.509. Chapter 76 establishes special requirements for certain abandoned property held by counties, municipalities, and school districts and does not require that this property be reported or delivered to the Comptroller. *See id.* §§ 76.001, 76.101, 76.301.

First, you ask when unauthorized fees should be presumed abandoned under section 72.101 of the Property Code, which establishes a presumption that property is abandoned after a three-year dormancy period. *See* Request Letter, *supra* note 1, at 4. You ask, "When does the three years start to run? Is it from the date of offense, from the date the fee was collected, or from the date that a county or municipality determines that it is unable to locate the individual?" *Id.* (Question 3). You also ask, "Assume that a fee was imposed, and that the individual was allowed to make multiple payments. When does the three years start to run on multiple payments? That is, would each payment have a separate start date or would it be based on the first payment or last payment?" *Id.* (Question 4).

Section 72.101(a) of the Property Code does not establish when the dormancy period begins for unauthorized pretrial diversion agreement fees. It merely establishes the general parameters of the presumption. Under section 72.101(a), personal property is presumed abandoned if, for longer than three years: "(1) the existence and location of the owner of the property is unknown to the holder of the property; and (2) according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised." TEX. PROP. CODE ANN. § 72.101(a) (Vernon 1995); *see also Melton v. State*, 993 S.W.2d 95, 98-99 (Tex. 1999) (knowledge of the owner's name and last known address at the time the fee was paid does not preclude the application of section 72.101(a)); *Tex. Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 279 (Tex. App.–Austin 2000, pet. denied) (the principle underlying section 72.101(a) is "that if an owner of personal property does not perform an act of ownership within three years, the property is presumed abandoned and should escheat to the State") (citing *Melton*, 993 S.W.2d at 102).

There is no provision that establishes the beginning of the dormancy period for property such as unauthorized fees collected by a county or municipality and there is no case law on the issue. By contrast, subsection (b)(1) of section 72.101 establishes precise events that begin the dormancy period for ownership in stock. *See* TEX. PROP. CODE ANN. § 72.101(b)(1) (Vernon 1995). And section 117.002 of the Local Government Code establishes the beginning of the dormancy period

for abandoned funds deposited in court registry funds and trust funds under that chapter. *See* TEX. LOC. GOV'T CODE ANN. § 117.002 (Vernon 1999); *Melton*, 993 S.W.2d at 98 (section 117.002 of the Local Government Code "governs when the Property Code's dormancy period begins to run for trust funds and court registry funds in the care of district and county clerks").

We conclude that the dormancy period for these unauthorized fees begins on the date a fee, or partial payment of a fee, is paid. In the absence of a governing statute or relevant case law, we look to section 117.002 of the Local Government Code for guidance, because it establishes the beginning of the dormancy period for analogous property. *Accord* Tex. Att'y Gen. Op. No. JC-0195 (2000) at 7 (using section 117.002 as guide for determining when dormancy period begins for unclaimed cash bail bond deposited with sheriff by a defendant against whom no case was actually filed). Under section 117.002, the dormancy period for funds deposited with courts under chapter 117 generally begins on the date of entry of final judgment or order of dismissal in the action in which the funds were deposited, *i.e.*, as of the time the owner of the funds is entitled to them. *See* TEX. LOC. GOV'T CODE ANN. § 117.002 (Vernon 1999) ("The dormancy period for funds deposited under this chapter begins on the later of: (1) the date of entry of final judgment or order of dismissal in the action in which the funds were deposited; (2) the 18th birthday of the minor for whom the funds were deposited; or (3) a reasonable date established by rule by the comptroller to promote the public interest in disposing of unclaimed funds."). Here, individuals have paid fees to local officials pursuant to pretrial diversion agreements in order to avoid prosecution. Because the officials lacked authority to collect the fees, the owners were entitled to the funds at the time they paid them. This is the date that the dormancy period under section 72.101 of the Property Code must commence for this property. *See* Tex. Att'y Gen. Op. No. JC-0195 (2000) at 8 (dormancy period for an unclaimed cash bail bond posted by a defendant against whom no case was filed began as of the date the district attorney's office formally terminated the pending prosecution and the defendant was entitled to request return of the bond from sheriff); *see also* TEX. GOV'T CODE ANN. § 311.021(3)-(4) (Vernon 1998) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended [, and] a result feasible of execution is intended . . . .").

In answer to your specific questions, the dormancy period starts to run from the date the county or municipality collected the fee. If an individual was allowed to make multiple payments, the dormancy period for each payment starts to run on the date of the payment.

You also ask about chapter 76 of the Property Code, a relatively new provision that permits counties, municipalities and school districts to retain certain abandoned property.[5] Under chapter 76, the holder of the property must report and deliver the property to the treasurer of the county, municipality, or school district, who must provide notice to the owner. *See* TEX. PROP. CODE ANN. §§ 76.101, 76.201-.204, 76.301 (Vernon Supp. 2003); *see also id.* § 76.002(1) ("a reference to the treasurer of a holder includes a person performing the duties of the treasurer of a holder in a school

---

[5]Chapter 76 of the Property Code was enacted in 1997. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1037, § 38, 1997 Tex. Gen. Laws 3875, 3889.

district, municipality, or county in which the office of treasurer does not exist"), (2) ("a reference to the chief fiscal officer of a holder includes a person performing the duties of the chief fiscal officer of a holder in a school district, municipality, or county in which the office of chief fiscal officer does not exist").

You ask, "If the fee and interest earned thereon is less than $100 per case, does chapter 76 of the Property Code apply, with the result that a municipality or county would not be required to report the money to the Comptroller?" Request Letter, *supra* note 1, at 4 (Question 5). According to the plain language of chapters 74 and 76 of the Property Code, a fee and interest on a fee valued at $100 or less and held by a county or municipality would be governed by chapter 76 rather than chapter 74. Chapter 74, which requires the holder of abandoned property to report and deliver the property to the Comptroller, expressly states that it "does not apply to a holder of property subject to Chapter 76." TEX. PROP. CODE ANN. § 74.001(b) (Vernon Supp. 2003). Chapter 76 applies to property presumed abandoned under chapter 72 if the holder is a municipality or a county and the property is "valued at $100 or less." *Id.* § 76.001. The requirements of chapter 74 do not apply to these funds.[6]

Attorney General Opinion JC-0463 (2002) did not consider whether abandoned fees collected pursuant to unauthorized pretrial diversion agreements might be governed by chapter 76 of the Property Code. To the extent it suggests that abandoned fees must always be reported and delivered to the Comptroller pursuant to chapter 74, Attorney General Opinion JC-0463 (2002) is modified.

Finally, with respect to monies that your office has already collected from counties and municipalities, you ask whether your office should transfer the amounts to the Comptroller's unclaimed property program and, if so, whether the money should be handled under chapter 74 or 76 of the Property Code. *See* Request Letter, *supra* note 1, at 4 (Question 6). As we have discussed, chapter 74 governs abandoned fees valued at over $100, whereas chapter 76 governs abandoned fees valued at $100 or less. The Comptroller administers abandoned property under chapter 74, but is not authorized to administer abandoned property subject to chapter 76. Chapter 76 provides for abandoned property to be administered at the local level and does not require that property within its scope be reported or delivered to the Comptroller. Because some of the monies at issue will be governed by chapter 76 rather than chapter 74, the monies may not be transferred to the Comptroller's unclaimed property program. The counties and municipalities that collected the fees will have records regarding when the fees were collected and in what amount. Thus, we suggest that the monies be returned to the counties and municipalities to determine which are governed by chapter 76 and which are governed by chapter 74.

In addition, you indicate that monies already collected from counties and municipalities have been allocated to various funds and general revenue and ask, "if the available balance in any of the funds from which money must be transferred is less than the amount to be transferred, from what

---

[6]The changes made in the law by the 1997 amendment to section 74.001 and enactment of chapter 76 apply "only to unclaimed property held by a holder, as that term is used in Chapter 76 . . . on or after June 30, 1998." *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1037, § 41(a), 1997 Tex. Gen. Laws 3875, 3895.

source must the transfer be made?" *Id.* (Question 7). Resolution of this question, which would require an inquiry into facts and an application of accounting principles, is beyond the purview of an attorney general opinion. *See* Tex. Att'y Gen. Op. Nos. GA-0003 (2002) at 1 ("factual findings . . . cannot be made in the opinion process"); JC-0427 (2001) at 2 (declining to answer questions about transfer of sick leave to and from a county sick leave pool to the extent they involve application of accounting principles and require the determination of fact issues, "which this office is not qualified to undertake").

The Honorable Carole Keeton Strayhorn - Page 10

## S U M M A R Y

Fees collected by counties and municipalities pursuant to unauthorized pretrial diversion agreements are not taxes governed by chapter 111 of the Tax Code. Counties and municipalities must administer abandoned fees and interest earned on the fees pursuant to chapters 74 and 76 of the Property Code. Attorney General Opinion JC-0463 (2002) is modified to the extent it suggests that abandoned fees must always be reported and delivered to the Comptroller pursuant to chapter 74 of the Property Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee